UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MIN WU,

    Plaintiff,

v.

INSTITUTE OF ELECTRICAL AND ELECTRONICS ENGINEERS, INC.,

    Defendant.

Case No. 2:24-cv-08436 (BRM) (SDA)

**MEMORANDUM ORDER**

    **THIS MATTER** is before the Court on Plaintiff Min Wu's ("Plaintiff") emergent application for a Temporary Restraining Order ("TRO") and Preliminary Injunction. (ECF No. 2.) Specifically, Plaintiff seeks to: (1) restrain and enjoin Defendant Institute of Electrical and Electronics Engineers, Inc. ("IEEE") "from implementing or enforcing any of the disciplinary actions or sanctions enumerated in the IEEE [Conduct Review Committee's ("CRC")] May 1, 2024 decision letter or the IEEE's July 3, 2024 decision letter"; (2) "restrain and enjoin IEEE from effectuating its removal and bar of [her] from her position as President of IEEE's [Signal Processing Society ('SPS')]"; (3) "restore [her] to her position, duly elected by the Society's members, as President of IEEE's SPS for the remainder of her elected term, i.e., through December 31, 2025"; and (d) "compel IEEE to recognize and abide by its Constitution, Bylaws, and Policies, including the detailed processes and procedures found in Bylaws I-110 and I-111 and Policy 7.10 for considering and imposing member discipline and sanctions." (ECF No. 3-2 at 31–32.)

    On August 13, 2024, Plaintiff filed a Verified Complaint against Defendant, alleging the following four causes of action: "Breach of Contract" (Count I); "Violation of the Implied Covenant of Good Faith and Fair Dealing" (Count II); "Violation of New York Not For Profit Corporation Law – Officer Removal" (Count III); and "Declaratory Judgment and Injunctive

1

Relief" (Count IV) (ECF No. 1) and simultaneously filed an emergent application for a TRO and Preliminary Injunction (ECF No. 3). On August 14, 2024, Defendant requested a brief extension of the deadline to respond to Plaintiff's Motion because defense counsel was out of the country attending a family funeral (ECF No. 5), and Plaintiff filed a letter in response to Defendant's request (ECF No. 6). Upon considering the parties' submissions and representations of counsel with respect to Defendant's extension request, the Court granted this request. On August 22, 2024, Defendant filed an Opposition to Plaintiff's Motion for a TRO and Preliminary Injunction. (ECF Nos. 15, 16, 17, 18.[1]) On August 23, 2024, the Court ordered the parties to submit supplemental briefing on the issue of subject matter jurisdiction, and specifically (1) whether a New York Civil Practice Law and Rules ("NY CPLR") Article 78 proceeding provides Plaintiff with the exclusive remedy she is seeking here, and (2) whether the Court has diversity jurisdiction over this action. (ECF No. 20.)

On August 26, 2024, Plaintiff submitted a supplemental brief arguing: (1) NY CPLR Article 78 does not provide for the exclusive remedy because she is alleging breach of contract and "Article 78 proceedings are not the sole or exclusive remedy where a plaintiff challenges their termination or removal from an organization as a breach of contract"[2]; (2) Unlike in the cases to which Defendant cites, she "challenges her removal as improper under N.Y. N.P.C.L. § 714, which prevents removal of officers of a not-for-profit corporation without a membership vote" and since "SPS is an organizational unit of IEEE, [her] position as SPS President is thus a member-elected

---

[1] ECF No. 15 is Defendant's Brief in Opposition to Plaintiff's Motion, and ECF Nos. 16, 17, and 18 are declarations and exhibits filed in support of Defendant's Opposition to Plaintiff's Motion.

[2] In support of this argument, Plaintiff cites to several New York state court cases including *Melucci v. Sackman*, 961 N.Y.S.2d 359 (N.Y. Sup. Ct. 2012), which states that courts can review a not-for-profit corporation's procedure to determine whether a board has complied with its own bylaws and procedures. *See id.*

2

officer of the overarching IEEE organization"; and (3) "Even if this matter were somehow exclusively regarded as an Article 78 action (a claim Plaintiff has not pled), this Court would nonetheless possess diversity jurisdiction" because the parties are diverse and the amount in controversy exceeds $75,000. (ECF No. 22 (citations omitted).) Regarding the amount in controversy, Plaintiff contends "her compensation at the University of Maryland, College Park, and her professional opportunities in the signal processing community are tied to her status in IEEE and SPS" in that "since her election, [she] received salary increases totaling more than $75,000, and up to $40,000 annually for research and scholarship" and, further, "opportunities in her professional community necessarily depend on her professional reputation and achievements, including her leadership within IEEE and SPS[,]" and accordingly "her academic status and opportunities are likely to be jeopardized if her removal is sustained." (ECF No. 22 at 3 (citing Wu Decl. ¶¶ 14, 16, 18; Ex. 1).)

On August 27, 2024, Defendant filed a supplemental brief in response to Plaintiff's supplemental brief, arguing: (1) A NY CPLR Article 78 proceeding is Plaintiff's exclusive remedy because "Plaintiff does not allege that she had an employment agreement with IEEE or that any contract existed between her and IEEE, other than IEEE's governing documents" but "[r]ather, the gravamen of Plaintiff's contract claims is that IEEE failed to comply with its internal governing documents, including its Bylaws, when it removed Plaintiff from her position as a volunteer leader of an IEEE Society, the SPS, by imposing a three-year leadership ban"; (2) Plaintiff's claim "is precisely the type of claim—*i.e.*, that an agency or not-for-profit corporation failed to follow its internal rules—that New York law requires be brought in an Article 78 proceeding, not by plenary

3

action"[3]; (3) Plaintiff's New York Not-for-Profit ("NY NFP") Corporation Law claim fails for two reasons: (a) NY NFP § 714 does not apply "because the SPS is not a legal entity, let alone a not-for-profit corporation" and (b) "because the New York Attorney General is authorized to take action to vindicate the rights of officers of not-for-profit corporations under N.Y. NFP Law § 112(9), there is no private right of action under N.Y. NFP Law § 714"; and (4) Plaintiff cannot establish diversity jurisdiction because Plaintiff cannot prove the amount in controversy exceeds $75,000 as "the only damages she alleges she suffered are reputational harm" and Plaintiff "has only offered vague and speculative claims of reputational damage"; and, further, even if Plaintiff had valid breach of contract claims, "damages to reputation are not generally recoverable in a breach of contract action under New York law unless the 'plaintiff can prove "specific business opportunities lost as a result of its diminished reputation."'" (ECF No. 25 (citations omitted).)

The Court declines to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b).[4]

**I. NY CPLR Article 78 Proceedings**

Under New York law, CPLR Article 78 "establishes a streamlined process for challenging the determinations of public bodies and administrative agencies" and has both a jurisdictional and a substantive element. *Doe v. New York Univ.*, 537 F. Supp. 3d 483, 490 (S.D.N.Y. 2021). "Jurisdictionally, Article 78 requires that an Article 78 proceeding be brought in New York Supreme Court." *Id.* (citing N.Y. C.P.L.R. § 7804(b)). "Substantively, the 'only questions that may

---

[3] In support of this argument, Defendant cites to several New York state court cases and one new Jersey state court case supporting the proposition that an Article 78 proceeding "is the proper avenue to challenge an organization like IEEE's compliance with its internal rules." (ECF No. 25 at 1–2.)

[4] In light of the Court's decision herein, the conference in this matter scheduled for August 29, 2024 is hereby canceled.

be raised' in an Article 78 proceeding are whether the challenged body 'failed to perform a duty enjoined upon it by law,' or whether its actions were 'without or in excess of jurisdiction,' 'arbitrary and capricious or an abuse of discretion,' or not 'supported by substantial evidence.'" *Id.* at 491 (citing N.Y. C.P.L.R. § 7803(1)–(4)). "Article 78 proceedings differ further from plenary civil actions in that Article 78 proceedings are characterized by a limited and expedited 'summary procedure.'" *Whitfield v. City of New York*, 96 F.4th 504, 520 (2d Cir. 2024) (quoting *Coma Realty Corp. v. Davis*, 200 A.D.3d 975, 161 N.Y.S.3d 125, 128, (2d Dep't 2021)). "[F]ederal courts routinely decline to exercise supplemental jurisdiction over Article 78 claims pursuant to 28 U.S.C. § 1367(c), citing the special solicitude afforded to this 'purely state procedural remedy.'" *Doe*, 537 F. Supp. 3d at 491 (quoting *Camacho v. Brandon*, 56 F. Supp. 2d 370, 380 (S.D.N.Y. 1999)).[5]

Here, the Court finds Plaintiff's claims regarding her removal from her former position as volunteer President of IEEE's SPS in non-compliance with IEEE's internal governing documents, including its bylaws, is more properly suited for an NY CPLR Article 78 proceeding because, while framed as a breach of contract claim, Plaintiff does not allege the existence of any express or implied contract with IEEE outside of IEEE's own bylaws. Rather, the essence of Plaintiff's claims is based on IEEE's alleged non-compliance with its bylaws and internal policies and procedures in improperly removing her from her position as President of SPS and imposing a three-year leadership ban. *See, e.g.*, ECF No. 1 ¶ 79 ("In short, the IEEE Board of Directors did

---

[5] The Court acknowledges that some federal courts have held they can properly exercise diversity jurisdiction over Article 78 claims. *See, e.g., Doe*, 537 F. Supp. 3d at 491–92; *Casale v. Metro. Transp. Auth.*, Civ. A. No. 05-04232, 2005 WL 3466405, at *6 (S.D.N.Y. Dec. 19, 2005); *cf. Petrello v. Zoning Bd. of Appeals of Vill. of Sagaponack*, Civ. A. No. 22-02632, 2022 WL 17278890, at *4 (E.D.N.Y. Nov. 29, 2022) ("The Court has not been able to find any guidance from the Second Circuit addressing whether courts may exercise diversity jurisdiction over state law claims arising under Article 78. The Second Circuit has, however, expressly declined to establish a *per se* prohibition against federal courts exercising supplemental jurisdiction over such claims." (citing *Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 155 (2d Cir. 2013)).

not follow any recognized process in the Bylaws, Governing Documents, or law to pursue removal."); *id.* ¶ 91 ("The action of the CRC in immediately removing Dr. Wu from her position as President of the Society violated IEEE Bylaw I-111(2) and Society Bylaw 205(2)."); *id.* ¶ 102 ("IEEE did not follow these required procedures before imposing sanctions against Dr. Wu, including but not limited to failing to convene a hearing board or conduct a hearing in accordance with Bylaw I-110 and Policy 7.10."); *id.* ¶ 108 ("The IEEE's failure to follow its own Governing Documents is a material violation of Dr. Wu's rights and privileges under the Bylaws and Policies of IEEE, rights and privileges Dr. Wu obtained through her longstanding, continued 30-year membership with IEEE and payment of membership fees to the IEEE."); *id.* ¶ 122 ("IEEE has not fulfilled its obligations under its policies to provide due process, to hold disciplinary action in abeyance pending appeal, and to meet deadlines.").

Further, New York courts, and at least one New Jersey court, have held that a NY CPLR Article 78 proceeding, and not a breach of contract action, is the proper avenue to challenge a non-profit organization like IEEE's compliance with its internal bylaws and procedures. *See Ullum v. Am. Kennel Club*, 134 A.D.3d 416, 417 (N.Y. App. Div. 1st Dep't 2015) ("[C]ourts are reluctant to interfere with the internal disciplinary affairs of a private voluntary association . . . and a breach of contract cause of action is not the proper vehicle for a claim that such an association has failed to fulfill obligations imposed by its internal rules."); *Bango v. Gouverneur Volunteer Rescue Squad, Inc.*, 101 A.D.3d 1556, 1557 (N.Y. App. Div. 3d Dep't 2012) ("Plaintiff's action, seeking review of the conduct of a not-for-profit corporation that allegedly terminated his membership through improper procedures and a failure to follow its own internal rules, sought relief that was properly the subject of a CPLR article 78 proceeding."); *Dormer v. Suffolk Cnty. Police Benev. Ass'n, Inc.*, 95 A.D.3d 1166, 1168 (N.Y. App. Div. 2d Dep't 2012) ("Notwithstanding the

6

allegations in the complaint that the [defendant] breached an implied contract and that the loss of a life insurance policy constitutes a contractual right which was breached by [plaintiff's] expulsion from the PBA, the gravamen of the complaint concerns the conduct of a not-for-profit corporation whose allegedly illegal and improper actions in expelling two members are properly reviewable under CPLR article 78. Further, since the plaintiffs seek to reinstate their membership with full benefits *nunc pro tunc*, they seek relief that was properly the subject of a proceeding pursuant to CPLR article 78." (citations omitted)); *James v. Nat'l Arts Club*, 99 A.D.3d 523, 525 (N.Y. App. Div. 1st Dep't 2012) (finding that "the appropriate venue for plaintiffs, as members of a private club, to challenge their expulsion would be in a CPLR article 78 proceeding"); *Levine v. Saah*, Civ. A. No. 15119/2020, 2021 N.Y. Misc. LEXIS 2593, at *20-21 (Sup. Ct. N.Y. Cnty. May 17, 2021) ("When reviewing whether a not-for-profit corporation complied with its own bylaws and procedures in expelling a member, however, a plaintiff must bring her claims in a special proceeding pursuant to CPLR article 78, not by plenary action."); Tr. of Mot. to Dismiss Decision at 25:20–29:23, *Synergy Microwave Corp. v. IEEE*, No. PAS-L-003482-20 (N.J. Super. Law Div. July 21, 2021)[6] (holding that claims relating to IEEE member disciplinary proceedings were governed by CPLR Article 78, and stating in relevant part: "Here, the gravamen of the Complaints -- of the claims brought by [Plaintiffs] is that they were unjustly found to have engaged in acts of plagiarism, in violation of explicit and implied IEEE procedures, such that all findings of misconduct against them must be withdrawn. See Complaint, paragraphs 68 through 81. This Court finds that this sort of claim is governed by New York CPLR Article 78[.]").

---

[6] The New Jersey Appellate Division affirmed the dismissal of these claims without reaching the issue of the Article 78 proceeding. *See Synergy Microwave Corp. v. Inst. of Elec. & Elecs. Engineers*, Civ. A. No. A-1317-21, 2023 WL 105708, at *6 (N.J. Super. Ct. App. Div. Jan. 5, 2023).

7

Therefore, in accordance with the cases cited above, the Court finds that Plaintiff's action—which seeks review of non-profit corporation Defendant's conduct in allegedly not complying with its bylaws and internal policies and procedures in removing her from her position as President of SPS and imposing a three-year leadership ban—is more properly the subject of a NY CPLR Article 78 proceeding rather than a breach of contract action in a New Jersey federal district court. Plaintiff's cited cases to the contrary, and her efforts to distinguish the cases to which Defendant cited, are unpersuasive. Accordingly, even assuming for purposes of this Order that the Court could use its discretion to exercise diversity jurisdiction over these Article 78 claims, the Court declines to do so here.

**II. Diversity Jurisdiction**

Putting aside the NY CPLR Article 78 discussion above, the Court is also not convinced it has diversity jurisdiction over this matter. "Federal courts are courts of limited jurisdiction that may only hear a case if the constitution or a federal statute provides the court with jurisdiction." *Jackson v. Del. River & Bay Auth.*, 224 F. Supp. 2d 834, 841 (D.N.J. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Federal courts have original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1332, which provide for federal question jurisdiction and diversity jurisdiction, respectively. "In order to have subject matter jurisdiction, a District Court must be able to exercise either diversity jurisdiction or federal question jurisdiction." *Haiying Xi v. Shengchun Lu*, 226 F. App'x 189, 190 (3d Cir. 2007) (citing 28 U.S.C. §§ 1331 and 1332). The plaintiff "bears the burden of proving that the federal court has jurisdiction." *McCracken v. Murphy*, 129 F. App'x 701, 702 (3d Cir. 2005) (citations omitted).

"[I]n a diversity action, the plaintiff must state all parties' citizenships such that the

8

existence of complete diversity can be confirmed." *Chem. Leaman Tank Lines v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 222 n.13 (3d Cir. 1999) (citing 5 Wright & Miller § 1208, at 100 (2d ed. 1990)); *see also Robinson v. CRS Facility Servs., LLC*, Civ. A. No. 12-2693, 2014 WL 3809251 (D.N.J. July 31, 2014) (finding plaintiffs "must plead the citizenship of the individual defendants for the court to determine whether complete diversity of the parties in fact exists and thus whether the court has jurisdiction to adjudicate the matter" (citations omitted)); *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 516 (D.N.J. 2000) ("It is the plaintiffs' burden to adequately plead diversity jurisdiction [in a diversity case]." (citations omitted)).

Further, "[a] plaintiff asserting diversity jurisdiction bears the burden of demonstrating that the amount in controversy exceeds $75,000." *In re Paulsboro Derailment Cases*, 704 F. App'x 78, 84 (3d Cir. 2017) (citing *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016)). If a defendant challenges the sufficiency of the plaintiff's amount in controversy, "the plaintiff who seeks the assistance of the federal courts must produce sufficient evidence to justify its claims." *Suber v. Kontinental Koaches, Inc.*, 104 F.3d 578, 583 (3d Cir. 1997). In determining whether the claim exceeds this threshold, the Court must assess "the value of the rights being litigated," *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993), or "the value of the object of the litigation." *Hunt v. Wash. State Apple Advers. Comm'n*, 432 U.S. 333, 347 (1977); *see also Coregis Ins. Co. v. Schuster*, 127 F. Supp. 2d 683, 686 (E.D. Pa. 2001) (quoting 14B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure 77 (3d ed. 1998)) ("It is well-settled by numerous judicial decisions . . . the amount in controversy for jurisdiction purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or protect or the value of the object that is the subject matter of the suit."). "[E]stimations of the amounts recoverable must be realistic" and an estimate of damages "should be objective and not based on

fanciful, pie-in-the-sky, or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 397 (3d Cir. 2004). Additionally, when a "complaint does not limit its request for damages to a precise monetary amount, the district court" may properly make "an independent appraisal of the value of the claim[.]" *Angus*, 989 F.2d at 146.

In *Auto-Owners Ins. Co.*, the Third Circuit summarized the legal standard for evaluating the amount in controversy requirement for purposes of diversity jurisdiction:

> [T]he party invoking diversity jurisdiction . . . bears the burden to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. But that burden is not especially onerous. In reviewing the complaint, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal."

*Auto-Owners Ins. Co.*, 835 F.3d at 395 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)) (emphasis added) (citations omitted). In other words, a district court must retain jurisdiction unless a plaintiff's claims are facially "insubstantial" to satisfy the amount in controversy requirement. *Lunderstadt v. Colafella*, 885 F.2d 66, 69–70 (3d Cir. 1989) (citing *Hagans v. Lavine*, 415 U.S. 528, 542 n.10 (1974)). "Accordingly, the question whether a plaintiff's claims pass the 'legal certainty' standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims." *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997).

Here, the parties do not dispute they are diverse but rather dispute the amount in controversy. Plaintiff argues the amount in controversy is met because "her compensation at the University of Maryland, College Park, and her professional opportunities in the signal processing community are tied to her status in IEEE and SPS" in that "since her election, [she] received salary

increases totaling more than $75,000, and up to $40,000 annually for research and scholarship" and, further, "opportunities in her professional community necessarily depend on her professional reputation and achievements, including her leadership within IEEE and SPS[,]" and accordingly "her academic status and opportunities are likely to be jeopardized if her removal is sustained." (ECF No. 22 at 3 (citing Wu Decl. ¶¶ 14, 16, 18; Ex. 1).) Defendant, however, contends Plaintiff cannot establish diversity jurisdiction because she cannot prove the amount in controversy exceeds $75,000 as "the only damages she alleges she suffered are reputational harm" and Plaintiff "has only offered vague and speculative claims of reputational damage[,]" and, further, even if Plaintiff had valid breach of contract claims, "damages to reputation are not generally recoverable in a breach of contract action under New York law unless the 'plaintiff can prove "specific business opportunities lost as a result of its diminished reputation."'" (ECF No. 25 at 3 (citations omitted).)

The Court agrees with Defendant and finds Plaintiff has not met her burden to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, as she is primarily alleging reputational harm. Allegations of reputational harm resulting in damages of over $75,000 plus attorneys' fees, unsupported by facts or evidence of specific injury, are insufficient to satisfy the jurisdictional amount in controversy requirement for damages. *See, e.g.*, *Szymkowicz v. Frisch*, Civ. A. No. 19-03329, 2020 WL 4432240, at *6 (D.D.C. 2020) (finding that damages asserted based on vague reputational harm were not enough to establish the amount in controversy); *Guldmann Inc. v. Vandahl Eng'g & Sales Ltd.*, Civ. A. No. 20-00274, 2020 WL 7388486, at *2 (D. Ariz. Dec. 16, 2020) ("Speculation about reputational harm that might befall [plaintiff] cannot support a finding that the amount in controversy requirement has been met."); *Lewis v. Weiss*, 631 F. Supp. 2d 1063, 1066 (N.D. Ill. 2009) (finding plaintiff's "assertions of 'reputational harm, emotional harm, emotional suffering, and humiliation' are unsupported by any facts or evidence

11

of specific injury" and finding "these allegations are insufficient to meet the jurisdictional floor for damages"). Plaintiff's statements regarding her potential damages in the form of anticipated losses of salary increases and/or bonuses are too speculative to prove she meets the amount in controversy. Based on Plaintiff's submissions, it does not appear that her salary and/or bonuses exclusively rely on, nor are solely based on, her leadership position within IEEE and SPS, and therefore, she cannot show, by a preponderance of the evidence, that she would suffer damages in excess of the jurisdictional threshold. Absent more, this is not sufficient to show the Court has diversity jurisdiction over this action.

Therefore, the Court concludes it lacks subject matter jurisdiction over this action. Moreover, even if the Court did have diversity jurisdiction to hear this case, it could abstain from hearing this case in light of its subject matter, which, as explained above, is more properly brought and addressed in a NY CPLR Article 78 proceeding. The Court has not been able to find specific guidance from the Second or Third Circuits addressing whether courts may exercise diversity jurisdiction over state law claims arising under Article 78, but even absent total exclusion, the Court concludes that other district courts' repeated refusals to exercise jurisdiction over Article 78 claims weighs in favor of abstention, particularly since this action, like some others, involves a dispute arising from a non-profit corporation's alleged non-compliance with its own bylaws and internal procedures.

Therefore, having reviewed the parties' submissions in support of Plaintiff's emergent application for a TRO and Preliminary Injunction, for the reasons set forth above and for good cause having been shown,

**IT IS** on this 29th day of August 2024,

**ORDERED** that Plaintiff's emergent application for a TRO and Preliminary Injunction (ECF No. 3) is **DISMISSED** for lack of jurisdiction; and it is further

**ORDERED** that, in light of the Court's decision herein, the conference in this matter scheduled for August 29, 2024 is hereby canceled.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE